UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTOINETTE DEAN,

        Plaintiff,

   v.                                            Case No. C-1-05-0696

CHILDREN'S HOSPITAL MEDICAL
CENTER,

        Defendant.

## **ORDER**

This matter is before the Court upon defendant's motion for summary judgment (doc. 17), plaintiff's opposing memorandum (doc. 28), and defendant's reply (doc. 30). Defendant has filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. 29).

### I. Introduction

Plaintiff Antoinette "Anne" Dean brings this action against Children's Hospital Medical Center (CHMC). She brings claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and Ohio Rev. Code Ch. 4112; age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and Chapter 4112; and violation of Ohio public policy. She makes the following allegations in support of her claims:

In or around 1987, CHMC hired plaintiff as a Registered Nurse. In or around May 2003,

1

plaintiff applied for a promotion to an available position as Senior Clinical Manager. Upon information and belief, she was the only individual to apply for that position for approximately six weeks. A younger, white, less qualified applicant who was not employed by CHMC applied for and was awarded the position. When plaintiff asked why she did not get the position, the hiring director told her the other candidate had more third-party billing experience, which was not the true reason. Third-party billing experience was not a required qualification for the position. Plaintiff was denied the position on the basis of her race and age.

Plaintiff registered concerns about the denial of the promotion internally at CHMC and by filing a race and age discrimination charge with the Equal Employment Opportunity Commission (EEOC) on or about May 5, 2003. Defendant thereafter changed the terms and conditions of plaintiff's employment in retaliation for her filing of the EEOC charge. Among other things, defendant changed plaintiff's job title, removed her job duties from her, and changed her work schedule from flexible hours to a rigid schedule, all of which caused her to suffer a decrease in pay, and subjected her to increased scrutiny and to a work environment so hostile that she was subjected to a constructive discharge. As a direct and proximate result of defendant's conduct, plaintiff has suffered and will continue to suffer substantial losses of earnings and benefits, emotional distress, and damage to her professional reputation.

## II. Motion for Summary Judgment

Defendant moves for summary judgment on all claims. Defendant argues that it is entitled to summary judgment on plaintiff's race and age discrimination claims because there is no direct evidence of discrimination; plaintiff cannot show that she was similarly qualified in all of the relevant aspects as the candidate who was selected; and even if plaintiff could establish a

2

prima facie case, she has no evidence from which a rational fact-finder could conclude that defendant's legitimate, non-discriminatory reasons for her non-selection were false. Defendant argues that plaintiff's retaliation claim fails as a matter of law because plaintiff cannot demonstrate an adverse employment action, there is no evidence of a causal connection between any alleged adverse action and the discrimination charge she filed in May 2003, and even if there were a causal connection, plaintiff cannot show that the legitimate reasons for the actions of which she complains were pretextual. Defendant asserts that plaintiff's constructive discharge claim must fail because she voluntarily resigned her position and her working conditions were not so intolerable that a reasonable individual would have felt compelled to resign. Finally, defendant alleges that plaintiff's public policy claim must fail as a matter of law because she cannot establish her discrimination and retaliation claims.

### III. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id*. (citing *Cities Serv.*, 391 U.S. at 288-289). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law." *Id*. at 251-52. If the evidence is merely colorable (*Id*. (citing *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967)), or is not significantly probative (*Id*. (citing *Cities Serv.*, 391 U.S. at 290), judgment may be granted.

### IV. Undisputed facts

1. Defendant's Home Health Care department (HHC) provides direct nursing care to sick children in their own homes.
2. Lisa Byrer was the Director of the HHC from 1993 until January 2004.
3. Three full-time Senior Clinical Managers reported to Byrer until 2003, when one of the full-time positions became a two-person "job share" position.
4. The Senior Clinical Managers until April 2003 were Sylvia Rineair, Susanne Cassidy, and Carrie Krueger.
5. The Senior Clinical Managers lead the HHC staff and coordinate HHC clinical services.
6. Plaintiff began her employment with defendant in 1987.
7. In 1989, after two years as a Registered Nurse (RN) on a medical/surgical floor, plaintiff transferred to an RN position in defendant's Emergency Department.
8. In 1991, plaintiff transferred to a position in the Operating Room.

9. In 1994, plaintiff left direct patient care and transferred to the Risk Management Legal Services Department.

10. In 1997, plaintiff became a Research Nurse in defendant's Infectious Disease Department.

11. In March 2000, plaintiff became a Field Nurse in HHC. At the time of her transfer, her direct supervisor was Sylvia Rineair. She completed orientation as an HHC Field Nurse in late May 2000.

12. In May 2001, Rineair rated plaintiff's overall performance as "contributes" on a five-level scale ranging from "does not meet requirements' to "needs improvement" to "contributes" to "achieves" to "excels." Rineair indicated that plaintiff needed to refamiliarize herself with policies for the submission of documentation and licensure and that she required reminders to send updated licensure. She also wrote on the form that plaintiff's Kentucky nursing license would expire in August of that year.

13. In October 2001, plaintiff applied for, and was promoted to, a newly-created part-time triage nurse position. Although the position was not a supervisory one, it was classified at a higher pay grade.

14. Plaintiff continued to work one Field Nurse shift every other week.

15. Rineair issued plaintiff a written warning on March 18, 2002, for letting her Kentucky nursing license expire.

16. Plaintiff received a rating of "contributes" on her second performance evaluation, which she received one year after her promotion to the triage nurse position.

17. Rineair commented on plaintiff's lack of participation in councils.

5

18. In early 2003, a part-time Senior Clinical Manager job-share position to be shared with Krueger was opened for interviews. Plaintiff submitted an application for the position in February 2003. Human Resources processed the application and forwarded it to Byrer.

19. HHC staff employees interviewed plaintiff on February 27, 2003.

20. The following month, two external candidates, Julie Denlinger and Jennifer Gold, submitted online applications. They were also interviewed by Byrer and the HHC management and staff groups.

21. After the interviews were completed, Byrer met with members of the staff interview group and the Senior Clinical Manager team to solicit their feedback on the candidates.

22. Before making her final decision, Byrer checked references on the external candidates and reviewed the HHC personnel file for Dean.

23. Byrer also solicited input from Krueger, the individual who would be sharing the position. Krueger's preferred candidate was Jennifer Gold.

24. On May 5, 2003, plaintiff filed an EEOC charge contesting her failure to be selected for the position.

25. Plaintiff was on medical leave when Byrer made the decision to select Gold for the position, so Byrer contacted plaintiff by phone to tell her she did not get the position.

26. Byrer was subsequently asked to provide Human Resources with a written summary of the reasons that led to her decision. She wrote:

> Anne's performance within the Home Care Department is standard. She has not exhibited an interest to become involved in departmental councils and projects, even though this has been pointed out to her on more than one evaluation. Her lack of ability to follow all home care policies and guidelines is of great concern. The Home Care Management team felt that even though Anne has home care experience and a diverse employment history, her lack of overall interest and participation as well as her inability to comply with all HC policies and guidelines eliminate her for contention in the leadership role of Clinical Manager. A strong commitment to the department and a superior performance record as a pediatric clinician are paramount for selection for this role.

Byrer depo., p. 101, exh. 47.

27. In early 2003, HHC management determined that the distribution of duties among staff was not effectively meeting the needs of the department and reassigned job duties among existing internal support staff. The redesigned positions reported to Senior Clinical Manager Susanne Cassidy.

28. Before plaintiff went on medical leave in March 2003, Byrer met with plaintiff and three other employees and announced that the new structure would include two part-time scheduling positions and two part-time case manager positions.

29. Byrer selected plaintiff and another staff member for the case manager positions.

30. Initially, the case managers were permitted to set their own schedules, provided they completed their 40 hours every two weeks.

31. Although the rest of the office staff started work between 7:30 and 9:00 a.m., plaintiff and a co-worker did not report to work on some occasions until 7:30 p.m.

32. In July 2003, plaintiff asked Byrer for a pay increase to compensate her for her lateral move into the case manager role.

33. Human Resources concluded that plaintiff's salary was appropriate given her past evaluations and her choice not to participate in the "clinical ladder" - - a promotional track with stringent requirements that defendant's nurses can select for career advancement and to earn higher pay.

34. In plaintiff's third performance evaluation prepared in late 2003, Cassidy noted improvement and rated plaintiff's performance as "achieves."

35. In December 2003, Byrer stepped down from the HHC Director position.

36. Gold was given responsibility for checking the medical records known as POT's prepared by the case managers and other administrative staff within HHC.

37. Plaintiff did not agree with some of the changes Gold noted on her POT's and expressed her concerns to Cassidy and to Vice-President Char Mason.

38. In January 2004, plaintiff accepted a position with another organization. She gave her notice of resignation to defendant in late February.

## V. Opinion

**A. Failure to promote claim**

Under the law of this Circuit, the same evidentiary framework applies to discrimination claims brought under Title VII, 42 U.S.C. § 1981, the ADEA, and state law. ***Mitchell v. Toledo Hospital,*** 964 F.2d 577, 582 (6th Cir. 1992); ***Plumbers & Steamfitters Comm. v. OCRC.,*** 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981). A plaintiff claiming discrimination under these statutes may establish her case by introducing either direct or circumstantial evidence that

the defendant discriminated against the plaintiff because of her membership in a protected class. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994).

In order to establish a prima facie case of discrimination based on a failure to promote, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *Nguyen v. City of Cleveland,* 229 F.3d 559, 562-563 (6th Cir. 2000).

The Sixth Circuit has indicated that although the fourth prong involves the making of some comparison of qualifications, the comparison to be made is not "the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the non-protected person was in fact selected over the plaintiff." *White v. Columbus Metropolitan Housing Authority,* 429 F.3d 232, 243 n.6 (6th Cir. 2005) (citing *Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 769 (11th Cir. 2005) (noting that "a plaintiff need only show that she satisfied the employer's objective qualifications to meet her *prima facie* burden, and that any consideration of the employer's subjective criteria is not relevant until the later stages of the *McDonnell Douglas* framework, because "[a] contrary rule, under which an employer's subjective evaluation could defeat the plaintiff's initial *prima facie* case, cannot be squared with the structure and purpose of the *McDonnell Douglas* framework"); *EEOC v.*

*Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1194 (10th Cir.2000) ("[S]ubjective qualifications[ ] are more properly considered at the second stage of the *McDonnell Douglas* analysis and a plaintiff's failure to meet such qualifications cannot be used to defeat the plaintiff's *prima facie* case"); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 729 (3d Cir.1995) (noting that "'the question of whether an employee possesses a subjective quality, such as leadership or management skill,' is more appropriately considered in the later stages of the *McDonnell Douglas* inquiry"); *Lynn v. Regents of Univ. of Cal.,* 656 F.2d 1337, 1344 (9th Cir.1981) ("In our view, objective job qualifications are best treated at step one and subjective criteria, along with any supporting evidence, are best treated at the later stages of the process. To do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved. This would defeat the purpose underlying the *McDonnell Douglas* process.")

The employer is entitled to summary judgment if the plaintiff does not establish a prima facie case. If the plaintiff establishes a prima facie case, the employer can overcome the prima facie case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer,* 29 F.3d at 1084.

Although the court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. *Wexler v. White's Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003). The Court in *Wexler* addressed the extent to which the reasonableness of an employer's decision may be considered:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998)(holding that, in evaluating a proffered nondiscrimnatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action')(emphasis added); *In re Lewis,* 845 F.2d 624, 633 (6th Cir. 1988)('Sears does not have to establish that the basis on which it acted in firing Lewis was *sound;* rather, Lewis has the burden of demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do this is to show that Sears' asserted business judgment was so ridden with error that defendant could not honestly have relied upon it.')(emphasis in original)(internal quotation marks omitted).

*Id*.

Plaintiff has produced sufficient evidence to establish a prima facie case of discriminatory failure to promote based on her race. The first three elements of a prima facie case are satisfied. Plaintiff is a member of a protected class, she applied for and was qualified for a promotion, and she was considered for and denied the promotion. Plaintiff has come forward with evidence to likewise establish the fourth element of her prima facie case. The record discloses that although their qualifications were not identical, both plaintiff and Gold had experience and credentials that made them viable candidates for the Senior Clinical Manager position, and there is evidence that defendant considered them both to be strong candidates. The evidence is therefore sufficient to permit a reasonable jury to determine that plaintiff and Gold had similar qualifications for the position for which Gold was selected over plaintiff.

Defendant has articulated legitimate, nondiscriminatory reasons for denying plaintiff the promotion. Defendant claims that it selected Gold over plaintiff because plaintiff was less qualified than Gold in that she lacked demonstrated leadership initiative, she had a history of disciplinary warnings and average performance evaluations, and Gold had additional experience in the insurance industry which defendant deemed beneficial to the performance of the job. Plaintiff has come forward with sufficient evidence to raise a question as to whether the reasons offered by defendant are a pretext for discrimination. A reasonable jury could find the reasons offered by defendant to be suspect given that defendant initially articulated only Gold's third-party payer experience as its justification for selecting Gold over plaintiff; third-party billing was not listed on the job description for Senior Clinical Manager; individuals involved in the interview process have assigned different weight to this factor, with Byrer testifying that she did not believe such experience was a paramount quality and was not necessary to perform the job (Byrer depo., pp. 33-34) and Cassidy testifying that she believed it was an important element and the reason for selecting Gold (Cassidy depo., p. 79); and it was not until after plaintiff had filed an EEOC charge based on her non-selection that defendant articulated additional reasons for not selecting plaintiff. Accordingly, defendant is not entitled to summary judgment on the race discrimination claim.

The Court need not address plaintiff's age discrimination claim because it appears

that she has abandoned this claim. Plaintiff does not give her age at the time she was denied the promotion and she does not provide Gold's age. Nor has plaintiff argued in support of the claim in her opposing memorandum. Accordingly, defendant is entitled to summary judgment on plaintiff's claim of discriminatory failure to promote based on her age.

## B. Retaliation claim

> Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), provides,
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
>
> Ohio Rev. Code § 4112.02 makes it illegal
>
> (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under §§ 4112.01 to 4112.07 of the Revised Code.

Federal case law interpreting Title VII generally applies to cases involving alleged violations of O.R.C. § 4112.02. *See Plumbers & Steamfitters,* 66 Ohio St.2d at 196, 421 N.E.2d at 131.

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in activity protected under the statute; (2) the exercise of her civil rights was known by defendant; (3) defendant thereafter took a materially adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. *Nguyen,* 229 F.3d at 563; *Thatcher v. Goodwill Industries of Akron,* 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997). "The burden of establishing a prima facie case in a retaliation action is not

13

onerous, but one easily met." *Nguyen,* 229 F.3d at 563.

To prove retaliation, the plaintiff must establish that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" ***Burlington Northern & Sante Fe Railway Co. v. White,*** 126 S.Ct. 2405, 2415 (2006). The Supreme Court in *White* elaborated on the "materially adverse" standard as follows:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." ***Oncale v. Sundowner Offshore Services, Inc***., 523 U.S. 75, 81-82 (1998). A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. Cf., *e.g.,* ***Washington v. Illinois Dept. of Revenue****,* 420 F.3d 658, 662 (7th Cir. 2005) (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. See 2 EEOC 1998 Manual § 8, p. 8-14. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." ***Washington****, supra,* at 661.

*Id.* at 2415 -2416.

Once plaintiff establishes a prima facie case of retaliation, the burden is on defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. ***Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,*** 783 F.2d 50, 54 (6th Cir. 1986).

The first two elements of a retaliation claim are satisfied in that plaintiff filed a charge with the EEOC on May 5, 2003, and defendant was aware of the charge. Plaintiff alleges that the third and fourth prongs are satisfied because her job assignment was thereafter changed to that of case manager in retaliation for her complaints and she suffered a loss of pay as a result. Plaintiff asserts that although she was unhappy with the case manager position and had no choice in the job change decision, the job offered the benefit of significant flexibility in the specific hours worked so long as the employee worked a full day, which allowed her to work on call and earn an additional $500 monthly income. Plaintiff claims with this flexibility in mind, her husband took a new job and she arranged for child care based upon the flexible schedule. Plaintiff alleges that unexpectedly, her supervisor, the same woman involved in hiring Jennifer Gold over her, removed the flexibility initially built into the job, which had a negative impact upon plaintiff's access to child care, her husband's job, and her ability to work on call. Defendant contends that the change in plaintiff's position cannot support an inference of retaliation because the decision to implement the change was made before plaintiff complained of discrimination, and the decision to require plaintiff and others to indicate when during the regular work day they would be in the office was made for legitimate reasons.

The evidence of record raises issues of fact as to whether alleged changes in plaintiff's work schedule and earning capacity following her complaints of discrimination constitute adverse employment actions and whether defendant took those actions in retaliation for plaintiff complaining about alleged discrimination in the denial of a promotion to Senior Clinical Manager. It is for the jury to resolve these issues and to determine whether the reasons offered by defendant for its actions are the true reasons or whether they are a pretext for retaliation. Accordingly,

defendant is not entitled to summary judgment on plaintiff's retaliation claim.

## C. Constructive discharge claim

Where a plaintiff claims that she was constructively discharged from her employment, she must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 887 (6th Cir. 1996). She must also establish that the employer deliberately created the intolerable working conditions "with the intention of forcing the employee to quit . . . " *Logan v. Denny's, Inc*., 259 F.3d 558, 568-569 (6th Cir. 2001) (citing *Moore v. KUKA Welding Sys.,* 171 F.3d 1073, 1080 (6th Cir.1999)). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Id*. (citing *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982)). In *Logan,* the Sixth Circuit adopted the following factors to be considered, singly or in combination, with regard to the first prong of the constructive discharge inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (citing *Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000) (alterations omitted) (quoting *Barrow v. New Orleans Steamship Ass'n,* 10 F.3d 292, 297 (5th Cir.1994)). The Sixth Circuit has held that "[p]roof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other 'aggravating factors.'" *Geisler v. Folsom,* 735 F.2d 991, 996 (6th Cir. 1984) (quoting *Clark v. Marsh,* 665 F.2d 1168, 1173-74 (D.C. Cir.1981)).

Plaintiff argues that she can establish a claim of constructive discharge because she was forced to work under Gold, the less-experienced woman who received the promotion over her, and she could overhear Gold training on aspects of Home Health Care with which plaintiff was intimately familiar since her workspace was directly outside Gold's workspace; the changes in the conditions of her employment resulted in an overall loss of pay; and the increased scrutiny of administrative reports (POT's) completed by Gold was found to be "overzealous." Plaintiff claims that the stress she experienced affected her physically, causing her to suffer chest pains, depression, and reflux disease.

Insofar as plaintiff alleges that the changes in the conditions of her employment resulted in an overall loss of pay, she may be able to establish her constructive discharge claim. Whether defendant's actions in fact caused plaintiff to suffer a reduction in pay and, if so, whether defendant took such actions with the intention of forcing plaintiff to quit are questions of fact for the jury to decide. Accordingly, defendant is not entitled to summary judgment on plaintiff's constructive discharge claim.

**D. Public policy claim**

In *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court recognized the tort of wrongful discharge in violation of public policy. The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4)

17

the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653, 657-58 (1995)(citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99).  The clarity and jeopardy elements are questions of law to be determined by the court, while the causation and overriding justification elements are questions of fact to be left to the jury.  *Id.* at 70, 652 N.E.2d at 658.

Defendant moves for summary judgment on plaintiff's public policy claim solely on the ground that she cannot establish her underlying claims.  Because the Court finds there are genuine issues of material fact underlying resolution of plaintiff's claims brought under the anti-race discrimination and anti-retaliation laws, plaintiff may proceed with her public policy claim insofar as she claims she was terminated in violation of those laws.

## VI. Conclusion

In accordance with the foregoing, defendant's motion for summary judgment is **GRANTED** as to plaintiff's age discrimination claim and is **DENIED** as to the remainder of plaintiff's claims.  This case will proceed to trial pursuant to the schedule established by the Court.

**IT IS SO ORDERED**.


                    S/Herman J. Weber
           HERMAN J. WEBER, SENIOR JUDGE
              UNITED STATES DISTRICT COURT